[No. H008846. Sixth Dist. Aug. 3, 1992.]

THE PEOPLE, Plaintiff and Respondent, v.
DAVID ROCCO ZITO, Defendant and Appellant.

[No. H009462. Sixth Dist. Aug. 3, 1992.]

In re DAVID ROCCO ZITO on Habeas Corpus.

**COUNSEL**

E. Evans Young, under appointment by the Court of Appeal, for Defendant and Appellant.

Daniel E. Lungren, Attorney General, George Williamson, Chief Assistant Attorney General, John H. Sugiyama, Assistant Attorney General, Laurence K. Sullivan and George F. Hindall III, Deputy Attorneys General, for Plaintiff and Respondent.

**OPINION**

**ELIA, J.**—David Rocco Zito owned an automobile body shop in Mountain View, California. He was a participant in a scheme to embezzle money from the California State Automobile Association (CSAA). By the time CSAA discovered the scheme, $386,390.32 had already been embezzled.

Zito was charged with conspiracy to commit grand theft (current Pen. Code, § 182, subd. (a) (1); grand theft (Pen. Code, §§ 484/487, subd. 1; and failure to file a tax return. (Rev. & Tax. Code, § 19406.) Also alleged was an enhancement for a loss greater than $100,000. (Pen. Code, § 12022.6, subd. (b).) According to the information, the events giving rise to the charges occurred between November 22, 1988, and April 30, 1990.

Zito pleaded no contest to grand theft and failure to file a tax return. He admitted the enhancement. The trial court sentenced him to four years in state prison. Zito was also ordered to pay $300,000 in direct restitution and a $10,000 restitution fine. (Gov. Code, § 13967.)

On appeal, Zito challenges the restitution order. He argues that the order: (1) violated the ex post facto prohibition; (2) did not identify the losses involved; (3) did not reflect whether CSAA had been reimbursed by its insurer for its losses; (4) exceeded the amount allowed under Government Code section 13967; and (5) improperly made appellant and his codefendant jointly and severally liable for the restitution. Zito also petitions for a writ of

habeas corpus, alleging that his counsel was ineffective and that the restitution order violated the ex post facto prohibition. We affirm the judgment of conviction and remand the case for a restitution hearing. The petition for a writ of habeas corpus is denied.

## DISCUSSION

### A. *Ex Post Facto*

■ Zito argues the restitution order violated the ex post facto prohibition because it applied current law to pre-1990 crimes. For reasons we shall explain, we conclude the matter must be remanded for a restitution hearing so that the trial court can determine which crimes or losses occurred before 1990.

In *Tapia* v. *Superior Court* (1991) 53 Cal.3d 282 [279 Cal.Rptr. 592, 807 P.2d 434], the California Supreme Court considered whether provisions of Proposition 115 could be applied to crimes committed before the measure's effective date. The Supreme Court decided that proposition provisions which defined conduct as a crime, *increased punishment*, or eliminated a defense, could not be applied to crimes committed before the measure's effective date. This was because such retrospective application would violate the rule against ex post facto legislation. (*Id.* at p. 298.)

Government Code section 13967 authorizes the trial court to require that a defendant pay restitution.[1] Section 13967 describes two types of restitution. These are direct restitution to the victim and a restitution fine. Before 1990, the direct restitution and restitution fine could not exceed a total of $10,000, regardless of the number of victims or counts involved.[2] (*People* v. *Blankenship* (1989) 213 Cal.App.3d 992, 999 [262 Cal.Rptr. 141]; *People* v. *Frey* (1989) 209 Cal.App.3d 139, 142-143 [256 Cal.Rptr. 810].) Effective January

---

[1]All further unspecified statutory references are to the Government Code.

[2]Former section 13967, subdivision (c) provided, "In cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim. Notwithstanding subdivision (a), *restitution shall be imposed in the amount of the losses, but not to exceed ten thousand dollars ($10,000). A* restitution order imposed pursuant to this subdivision shall identify the losses to which it pertains, and shall be enforceable as a civil judgment. . . ." (Stats. 1988, ch. 975, § 1, pp. 3151-3152, italics added.) Present section 13967, subdivision (c) provides, in pertinent part, "In cases in which a victim has suffered economic loss as a result of the defendant's criminal conduct, and the defendant is denied probation, in lieu of imposing all or a portion of the restitution fine, the court shall order restitution to be paid to the victim. . . . Notwithstanding subdivision (a), *restitution shall be imposed in the amount of the losses, as determined.* The court shall order full restitution unless it finds clear and compelling reasons for not doing so, and states them on the record. A restitution order imposed pursuant to this subdivision shall identify the losses to which it pertains, and shall be enforceable as a civil judgment. . . ." (Italics added.)

1, 1990, section 13967 was amended to permit direct restitution, in lieu of all or a portion of the restitution fine, "in the amount of the losses, as determined." (§ 13967, subd. (c).)

In this case, the crimes or losses occurred between November 22, 1988, and April 30, 1990. As to the pre-1990 losses, the rule against ex post facto legislation would apply so long as restitution is characterized as "punishment."

In these circumstances, we believe that this characterization of restitution is appropriate. In *People* v. *Walker* (1991) 54 Cal.3d 1013 [1 Cal.Rptr.2d 902, 819 P.2d 861], the California Supreme Court stated, "[a]lthough the purpose of a restitution fine is not punitive, we believe its consequences to the defendant are severe enough that it qualifies as punishment . . . ." (*Id.* at p. 1024.) Although *Walker* considered this issue in a different context—with respect to violation of plea bargains—we believe the same analysis applies here. Just as a plea bargain violation may have a severe impact upon a defendant, imposition of a restitution fine may also have a serious effect. Indeed, this case is an apt example. If pre-1990 law applies, restitution is limited to $10,000. If post-1990 law applies, appellant may be required to pay the "amount of the losses, as determined" which in this case is $300,000—a far greater amount.

Having decided that restitution constitutes punishment for these purposes, it follows that the ex post facto prohibition applies and therefore restitution may not exceed a total of $10,000 as to the pre-1990 losses. However, it is not clear which losses occurred before 1990. For this reason, Zito asks that the matter be remanded for a restitution hearing so that the date of the losses may be determined.

Even though the People agree with our conclusion that applying amended section 13967 to pre-1990 losses would violate the ex post facto prohibition, they argue that it is Zito's responsibility to demonstrate which losses occurred before 1990. Because Zito did not make this showing, the People contend the issue is waived.

We disagree. Although Zito should have raised this issue below, his failure to do so does not amount to a waiver. " 'It is well established that when the trial court pronounces a sentence which is unauthorized by the Penal Code that sentence must be vacated and a proper sentence imposed whenever the mistake is appropriately brought to the attention of the trial court or the

reviewing court.' This rule also applies to sentences which are unauthorized because of an error in the matter of restitution." (*People* v. *Rivera* (1989) 212 Cal.App.3d 1153, 1163-1164 [261 Cal.Rptr. 93], quoting *People* v. *Benton* (1979) 100 Cal.App.3d 92, 102 [161 Cal.Rptr. 12]; see also *People* v. *Rowland* (1988) 206 Cal.App.3d 119, 126-127 [253 Cal.Rptr. 190].) Accordingly, we conclude the matter must be remanded for a restitution hearing so that the trial court can determine which losses occurred before 1990.

### B. *Identity and Amount of Losses*

■ Zito contends that the trial court failed to identify and specify the amount of the victim's losses. The record reveals the following. At the sentencing hearing, Zito introduced evidence to support his probation request. He also challenged the probation officer's report in several respects. However, Zito did not present any evidence concerning the amount of the victim's loss, or request a hearing on the amount of the restitution. (§ 13967, subd. (c).) When the court imposed $300,000 in direct restitution, Zito did not object. Unlike the ex post facto issue, which involved the trial court's power to impose the restitution aspect of the sentence, this issue concerns the identity and specificity of the losses involved. Because it is a purely factual issue, it is susceptible of waiver. For this reason, Zito's failure to object means the issue is waived. (*People* v. *Geddes* (1991) 1 Cal.App.4th 448, 457-458 [1 Cal.Rptr.2d 886]; *People* v. *Goulart* (1990) 224 Cal.App.3d 71, 83-84 [273 Cal.Rptr. 477].)

### C. *Insurance*

The probation officer's report indicated that the victim's aggregate loss from the thefts was $386,390.32. The report also stated that the victim "is insured by a bonding company and has a $50-100,000 deductible policy." The report did not indicate whether the victim had been reimbursed for any of its loss pursuant to the policy. The probation officer recommended direct restitution "as determined by the Court."

In *People* v. *Williams* (1989) 207 Cal.App.3d 1520 [225 Cal.Rptr. 778], the court discussed the effect of insurance upon a restitution order. The court concluded that "A restitution order under Government Code section 13967, subdivision (c) may not exceed the victim's losses, defined as '*any expenses for which the victim has not and will not be reimbursed from any other source*.' (Gov. Code, § 13960, subd. (d)." (*Id*. at p. 1524.) ■ According to *Williams*, a victim whose insurer has already reimbursed it for its losses cannot recover again through direct restitution under section 13967, subdivision (c). Although we agree with this analysis, and although the probation

report indicates that CSAA may have received compensation from its insurer for its losses, Zito failed to raise this issue when the trial court imposed restitution. Zito's failure to object means that the issue has been waived. (*People* v. *Geddes*, *supra*, 1 Cal.App.4th at p. 457.)

### D. *Section 13967, Subdivision (a)*

■ Zito also argues that the trial court erred in imposing a $10,000 restitution fine under section 13967, subdivision (a). The People agree. Section 13967, subdivision (c), permits direct restitution, *in lieu of all or a portion of the restitution fine* under subdivision (a). (§ 13967, subd. (c).) Accordingly, once the trial court ordered $300,000 in direct restitution, it was prohibited from ordering Zito to pay a $10,000 restitution fine.

### E. *Joint and Several Liability*

■ Zito argues that the trial court erred in making him and his codefendant jointly and severally liable for the $300,000 in direct restitution. At the codefendant's sentencing hearing, the court denied probation and sentenced the codefendant to four years in state prison. In addition, the trial court ordered him to pay $300,000 in direct restitution and a $100 restitution fine. The court noted that the codefendants were jointly and severally liable for the loss but that the victim would receive no more than $300,000.

In *People* v. *Hernandez* (1991) 226 Cal.App.3d 1374 [277 Cal.Rptr. 444], the court considered whether two defendants could be jointly and severally liable for restitution. The court decided that they could not, and struck that aspect of the restitution order. (*Id.* at p. 1380.) The court found two flaws with joint and several liability. First, the court emphasized that the order "attempts to address civil liability, yet deprives a defendant of civil litigation due process." (*Id.* at p. 1379.) The court noted that "a trial court cannot properly conclude that the defendant owes money to a third party for other unproved or disproved crimes or conduct." (*Ibid.*) The court also emphasized that a civil litigant has important due process rights, such as discovery and the right to have a jury determine the issue of liability and damages.

The *Hernandez* court also decided that the joint and several liability order was vague. It reasoned that "defendant must wait, perhaps up to the very end of his probation term, to determine what is required of him. His codefendant might timely pay his half of the $4,000 order or at any time may cease making payments. Aside from problems associated with giving defendant notice of when his codefendant has failed to make restitution, defendant enters probation not knowing the parameters of his probationary conditions." (*People* v. *Hernandez*, *supra*, 226 Cal.App.3d at p. 1380.)

We disagree with *Hernandez*. We conclude that a joint and several restitution order is permissible. In reaching our conclusion, we have closely examined section 13967. The statute does not contain any language which would prohibit joint and several liability. Thus, there is nothing in the statute itself to deter us from reaching our result.

Moreover, another California court has allowed this type of restitution order. In *People v. Flores* (1961) 197 Cal.App.2d 611 [17 Cal.Rptr. 382], the defendant argued that the trial court erred in ordering joint and several restitution. The defendant contended that he should be liable for only one-half of the victim's losses. In rejecting this argument, the court emphasized, " 'Where two or more persons act in concert, it is well settled both in criminal and in civil cases that each will be liable for the entire result.' " (*People v. Flores, supra,* 197 Cal.App.2d at p. 616, quoting Prosser on Torts (2d ed. 1955) § 45, p. 225.)

Other jurisdictions have permitted joint and several restitution orders. Several state courts engage in this practice. (See e.g., *Brent v. State* (1985) 63 Md.App. 197 [492 A.2d 637]; *People v. Broderick* (1989) 191 Ill.App.3d 933 [548 N.E.2d 428]; *Lovell v. State* (1988) 189 Ga. App. 311 [375 S.E.2d 658]; *Sattari v. State* (1990 Ala.Cr.App.) 577 So.2d 535; *Leach v. State* (1991) 307 Ark. 201 [819 S.W.2d 1]; *State v. LaCasce* (1986 Maine) 512 A.2d 312; *People v. Turco* (1987) 130 A.D.2d 785 [515 N.Y.S.2d 853].) Federal courts have also authorized joint and several restitution orders. (See e.g., *United States v. Tzakis* (1984 2d Cir.) 736 F.2d 867.)

We believe that there are sound policy reasons for permitting a trial court to order that a defendant and his codefendant be jointly and severally liable for restitution. For example, we are mindful that "[r]estitution imposed in a proper case and in an appropriate manner may serve the salutary purpose of making a criminal understand that he has harmed not merely society in the abstract but also individual human beings, and that he has a responsibility to make them whole." (*People v. Richards* (1976) 17 Cal.3d 614, 620 [131 Cal.Rptr. 537, 552 P.2d 97].) Joint and several liability is consistent with the defendant's obligation to reimburse the victim for his or her losses. Joint and several liability also increases the likelihood that the victim will be fully compensated. Ensuring that the victim be compensated is an important component of the restitution scheme.

We next consider *Hernandez*'s criticism of joint and several restitution orders. *Hernandez* reasoned that such orders would deprive a defendant of civil litigation due process. However, all restitution awards deprive a defendant of civil litigation due process. This is because all orders imposed

pursuant to section 13967, subdivision (c) "shall be enforceable as a civil judgment[s]." Thus, even though the orders are enforceable as civil judgments, a defendant is not entitled to the same panoply of due process rights afforded a civil litigant.

Moreover, section 13967 does guarantee a defendant some due process rights. The statute allows the defendant "the right to a hearing before the judge to dispute the determination made regarding the amount of restitution." Accordingly, a defendant will receive notice and opportunity to contest the joint and several order. Indeed, joint and several liability may not be preferable in all cases involving codefendants. By permitting the defendant to contest the issue, the court has an opportunity to determine the merits of such an order in the particular circumstances of the case.

*Hernandez* also decided that the joint and several restitution order was vague since the defendant "enters probation not knowing the parameters of his probationary conditions." Again, we disagree with this analysis. First, section 13967, subdivision (c) does not involve restitution imposed as a condition of probation. Second, in this case, defendant knows exactly what the conditions of his sentence involve. He is obligated to pay the full amount of restitution.

Although *Hernandez* seemed to emphasize the practical difficulties of a joint and several restitution order, we do not believe these difficulties are insurmountable. For example, a problem might arise regarding amount of payment. One way to make sure the victim does not receive double compensation is to require that defendants receive notice of amounts paid by codefendants. Moreover, even if defendants ended up contributing more than what the victim was entitled to receive, each defendant could then be entitled to a pro rata return of any excess he has contributed. In this respect, section 13967, subdivision (c) provides, "Restitution collected pursuant to this subdivision shall be credited to any other judgments for the same losses obtained by the victim against the defendant arising out of the crime for which the defendant was convicted." We construe the term "defendant" to include "codefendants." Accordingly, this provision ensures that the victim does not receive a windfall or a double recovery.

To be sure, we recognize that it is possible that some defendants will end up contributing more than others. Nonetheless, a defendant can always seek contribution from codefendants. Although obtaining such contribution may prove difficult, we believe this concern is overshadowed by the salutary goal of compensating the victims of crime. It is imperative that the victims be compensated for the amount of their loss.

Nor are not persuaded by *Hernandez*'s concern that joint and several liability will impede the rehabilitative purpose of restitution. *Hernandez* stressed that this purpose "is clouded when the fulfillment of the condition depends on the actions of another who is completely independent from the defendant." (*People* v. *Hernandez, supra*, 226 Cal.App.3d at p. 1380.) In this case, we believe joint and several liability bolsters the rehabilitative purpose of restitution. An order imposing joint and several liability does not detract from the defendant's responsibility to compensate the victim for his or her losses. To the contrary, it underscores it. A defendant's obligation to pay does not hinge upon his codefendant. Both are jointly and severally liable for the full amount. With respect to nonpaying codefendants, a defendant can seek contribution. If each codefendant pays the full amount, then each codefendant will be entitled to a pro rata return. Either way, the joint and several order emphasizes the defendant's responsibility to compensate victims of crime, and therefore such an order enhances the rehabilitative aspects of restitution.

■ Finally, Zito argues the joint and several liability order was unfair because the trial court failed to compare the culpability of the two defendants when making the order. According to Zito, his codefendant was more culpable. However, by pleading no contest to grand theft, Zito admits responsibility for the losses. (Pen. Code, § 1016, subd. 3.) He is therefore "culpable" and is responsible for the full amount of the victim's losses. Accordingly, his obligation to pay does not hinge upon the culpability of his codefendant.

We conclude that the trial court did not err in making appellant jointly and severally liable for restitution.

## CONCLUSION

As previously pointed out, some of Zito's arguments on appeal are waived by the failure to object below. However, our conclusion that the matter must be remanded for a restitution hearing will give Zito an opportunity to raise these arguments again. Because we have determined that Zito is entitled to a restitution hearing, Zito has received the relief requested. For this reason, we shall deny his petition for writ of habeas corpus.

## DISPOSITION

The judgment of conviction is affirmed. The matter is remanded to the trial court for a restitution hearing so that the proper amount of restitution

can be determined in accordance with the statements in this opinion. The accompanying petition for a writ of habeas corpus is denied.

Capaccioli, Acting P. J., and Premo, J., concurred.

A petition for a rehearing was denied August 13, 1992, and appellant's petition for review by the Supreme Court was denied November 16, 1992.